IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MARTHA CAMP, Individually, and          §
as Executrix of the Estate of          §
Earnest S. Camp and on behalf          §
of University Bookstore Inc.            §
Employee Stock Ownership Plan,          §
and UNIVERSITY BOOKSTORE INC.           §
EMPLOYEE STOCK OWNERSHIP PLAN,          §
and DAVID ASKANASE, Chapter 7          §
Trustee for the Bankruptcy             §
Estate of University                   §
Bookstore, Inc., and                   §
ESTATE OF EARNEST S. CAMP,             §
                                        §
      Plaintiffs,                       §
                                        §
v.                                      §
                                        §          CIVIL ACTION NO. H-05-3580
RCW & CO., INC., d/b/a ROLAND          §
CRISS & CO. LTD., CHRISTINE             §
DENTON, ROLAND CRISS                    §
INVESTMENTS CORPORATION,                §
DANIEL HOLLMANN, HOLLMANN,              §
LYON, PATTERSON & DURELL INC.,          §
ERIN BONNER, PREFERRED                  §
BUSINESS SERVICES INC. d/b/a            §
LIBERTY BUSINESS EXCHANGE,              §
MCCLURE SCHUMACHER &                    §
ASSOCIATES LLP, BRUCE RUUD              §
& ASSOCIATES LLC,                       §
MCCLURE & SCHUMACHER PC,                §
and JEFFREY A. SCHUMACHER,             §
                                        §
      Defendants.                       §

MEMORANDUM AND ORDER

      Pending are Defendants Daniel Hollmann's and Hollmann, Lyon,

Patterson & Durell, Inc.'s Motions to Dismiss Pursuant to Rule

12(b)(6) the Second Amended Complaint of Plaintiff Martha Camp,

Individually and as Executrix of Earnest S. Camp (Document No. 49),

and the Second Amended Complaint of Plaintiff David J. Askanase, Chapter 7 Trustee for the Bankruptcy Estate of University Bookstore, Inc., and the University Bookstore, Inc. Employee Stock Ownership Plan (Document No. 50); Defendants McClure & Schumacher, P.C.'s, Jeff McClure's,[1] and McClure, Schumacher & Associates, L.L.C.'s Motions to Dismiss pursuant to Rule 12(b)(6) (Document No. 51) and 12(b)(1) (Document No. 52); Defendant Bruce Ruud & Associates, L.L.C.'s Motions to Dismiss pursuant to Rule 12(b)(6) (Document No. 55) and 12(b)(1) (Document No. 57); Defendants Erin Bonner's and Preferred Brokerage Services, Inc. d/b/a Liberty Business Exchange's Motion to Dismiss (Document No. 59); and Defendants Roland Criss & Co., Ltd.'s, Christine Denton's, and Roland Criss Investment Corp.'s Plea in Abatement (Document No. 83). After carefully considering the motions, responses, replies, and the applicable law, and having conducted a telephone conference to hear further arguments of counsel for Plaintiffs and for the Roland Criss Defendants (as defined below on page 4) on the latter's Plea in Abatement, the Court concludes as follows.

## I.  Background

This case arises out of a complex business transaction involving the sale of a closely-held corporation, University

---

[1] "Jeff Schumacher" is misidentified as "Jeff McClure," an error that pervades these motions.

Bookstore, Inc. ("UBI"), a college bookstore located in College Station, Texas, to an employee stock ownership plan ("ESOP"). Earnest Camp ("Mr. Camp") was the sole shareholder of UBI and served as its Secretary and Treasurer.  His wife, Martha Camp ("Ms. Camp") (collectively with Mr. Camp, the "Camps") served as President.  In June, 1999, the Camps contacted Defendant Preferred Business Services, Inc. d/b/a Liberty Business Exchange ("Business Exchange") to investigate the possibility of procuring a buyer for the assets of UBI.  After several meetings with its owner, Erin Bonner ("Bonner") (collectively with Business Exchange, the "Business Exchange Defendants"), Mr. Camp signed a listing agreement granting Business Exchange the sole and exclusive right to sell the assets of UBI to a third party for $2.4 million, and for which Business Exchange would receive $120,000 (5% of the $2.4 million sales price).  The agreement also provided that Business Exchange was to "use its best efforts to offer for sale and procure a ready, willing and able purchaser for" UBI.  Document No. 48 ¶ 7.23.

In November, 1999, Business Exchange recommended to the Camps that they retain Defendants R.C.W. & Co., Inc. d/b/a Roland Criss & Co., Ltd. ("Roland Criss") to assist in the potential sale of UBI stock to an employee stock ownership plan.  The Camps allegedly relied on Business Exchange's representation that Roland Criss was "a reputable investment bank and consulting firm with specialized

3

knowledge and experience with employee stock ownership plans and stock related transactions" when they hired Roland Criss to structure, design, and finance the potential transaction. Id. ¶ 7.28.

On November 30, 1999, UBI and Roland Criss entered into an agreement, which Mr. Camp approved and accepted in his official capacity as Secretary and President of UBI, to conduct a business valuation of UBI's stock.   In the agreement, Roland Criss represented that it would (1) assist in the planning, arrangement, and administration of the employee stock ownership plan, in exchange for a $3,500 fee for the plan design services, $150/hour for other services, and an additional 2% fee ($36,000) on completion of the sale; and (2) retain an attorney to prepare final documents for filing with the appropriate agencies and draft the sales agreement, the costs to be paid by UBI.   Id. ¶¶ 7.37-.45.

The valuation was provided by Defendant Roland Criss Investments ("Criss Investments"), whose Senior Vice President was Christine Denton ("Denton") (collectively with Roland Criss, the "Roland Criss Defendants").   In an opinion issued on July 7, 2000, Criss Investments valued the stock of UBI at $2.4 million as of May 1, 2000.   Document No. 47 ¶ 66; Document No. 48 ¶ 7.59.   The Camps and UBI allegedly relied on this valuation in their decisions to proceed with the implementation of an ESOP, and to continue with the services of the Roland Criss Defendants.

4

In 2000, UBI established the UBI Employee Stock Ownership Plan (the "UBI ESOP"), adopted the UBI Employee Stock Ownership Trust (the "UBI Trust"), and appointed as its trustee Philip Beard, Vice President of UBI ("Beard"). Defendants Daniel Hollmann and the Hollmann Law Firm (the "Hollmann Defendants") were retained to draft the documents for and assist in the design of the UBI ESOP and the UBI Trust. During several discussions regarding the impending sale, the Hollmann Defendants and the Roland Criss Defendants allegedly represented to the Camps and Beard that the transaction complied with controlling law.

On January 12, 2001, the UBI Trust purchased all 250 shares of UBI owned by Mr. Camp for $2.4 million. Id. ¶¶ 7.77-.78. Part of the purchase price was funded by a third-party lender and personally secured by Mr. Camp. Shortly thereafter, Mr. Camp paid Business Exchange $93,750, based on the adjusted sales price of 75% of UBI stock. The Hollmann Defendants certified and filed the forms and documents with the IRS requesting qualification approval for the UBI ESOP and Trust, which approval was granted around May 11, 2001. Later that year, Criss Investments updated its valuations of the UBI stock as follows: (1) on September 20, 2001: $1.6 million (as of April 30, 2001); and (2) on August 23, 2002: $1.8 million, (as of April 30, 2001). Document No. 47 ¶¶ 67-68; Document No. 48 ¶¶ 7.60-.61.

On April 19, 2004, Defendant McClure, Schumacher & Associates, L.L.P. ("MSA") issued a valuation to UBI stating that the fair market value of UBI was $1.1 million as of January 12, 2001--$1.3 million less than the opinion issued by Criss Investments on July 7, 2000.  Subsequently, Ms. Camp, individually, and on behalf of Mr. Camp's estate, entered into a settlement agreement with the UBI ESOP on June 7, 2004, allegedly in reliance on the opinion of Defendant Bruce Ruud & Associates, LLC ("Bruce Ruud") that the proposed settlement was reasonable.  Id. ¶ 8.127.  Pursuant to the agreement, Ms. Camp paid $1.3 million (a $700,000 check and $600,000 in debt forgiveness) to the UBI ESOP and received in exchange "certain claims believed to be assignable at the time of settlement."  Id. ¶ 7.93.  In 2006, Ms. Camp allegedly "became aware" that UBI or the UBI ESOP sold a parcel of land for $1.2 million that had been owned by UBI when the Camps made the initial sale of their UBI stock.  Id. ¶ 7.103.

Ms. Camp filed suit in state court on September 30, 2004, alleging numerous claims under Texas law and ERISA against the Roland Criss Defendants, the Hollmann Defendants, and the Business Exchange Defendants.  After removal to federal court, the action was stayed when UBI filed for bankruptcy.  After the stay was lifted, Plaintiff David J. Askanase, as Trustee ("Trustee") for the bankruptcy estate of UBI and the UBI ESOP, filed a Second Amended Complaint asserting claims against the Roland Criss Defendants and

the Hollmann Defendants for malpractice, violation of the Deceptive Trade Practices Act ("DTPA"), and breach of fiduciary duty under ERISA and Texas common law.  Document No. 47.  Ms. Camp also filed a Second Amended Complaint, realleging her original claims, asserting new claims, and adding as new Defendants MSA, McClure & Schumacher, P.C. ("MSA P.C."), Jeff Schumacher ("Schumacher) (collectively with MSA and MSA P.C., the "MSA Defendants"), and Bruce Ruud.  Document No. 48.  Defendants now bring multiple challenges to the claims of Ms. Camp and the Trustee (collectively, "Plaintiffs") under Fed. R. Civ. P. 12(b)(1), 12(b)(6), and the Roland Criss Defendants have filed a plea in abatement, all of which are addressed in turn.

## II.   Standard of Review

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  When a district court reviews the sufficiency of a complaint before it receives any evidence either by affidavit or admission, its task is inevitably a limited one.  *See* Scheuer v. Rhodes, 94 S. Ct. 1683, 1686 (1974).  The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the claims.  Id.

In considering a motion to dismiss under Rule 12(b)(6), the district court must construe the allegations in the complaint

7

favorably to the pleader and must accept as true all well-pleaded facts in the complaint. *See* Lowrey v. Texas A & M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997). Dismissal of a claim is improper "unless it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." Leffall v. Dallas Indep. Sch. Dist., 28 F.3d 521, 524 (5th Cir. 1994). "However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." Fernandez-Montes v. Allied Pilots Ass'n, 987 F.2d 278, 284 (5th Cir. 1993).

"The plaintiff need not set forth all the facts upon which the claim is based; rather, a short and plain statement of the claim is sufficient if it gives the defendant fair notice of what the claim is and the grounds upon which it rests." Mann v. Adams Realty Co., 556 F.2d 288, 293 (5th Cir. 1977). Therefore, in challenging the sufficiency of the complaint under Rule 12(b)(6), the defendant bears the burden of proving that "no relief could be granted under any set of facts that could be proved consistent with the allegations" in the complaint. Hishon v. King & Spalding, 104 S. Ct. 2229, 2232 (1984).

III.  <u>Discussion</u>

A.   <u>The Business Exchange Defendants</u>

1.   Count 16: Breach of Contract

The Business Exchange Defendants move for dismissal of Ms.
Camp's breach of contract claim, contending *inter alia* that they
fully performed their obligations under the listing agreement.
Document No. 59 at 6-9.  "The essential elements of a breach of
contract claim are:  (1) the existence of a valid contract;
(2) performance or tendered performance by the plaintiff;
(3) breach of the contract by the defendant; and (4) damages
sustained by the plaintiff as a result of the breach."  <u>Aguiar v.
Segal</u>, 167 S.W.3d 443, 450 (Tex. App.--Houston [14th Dist.] 2005,
pet. denied); *accord* <u>Pegram v. Honeywell, Inc.</u>, 361 F.3d 272, 288
(5th Cir. 2004).  The listing contract, which is not attached to
the Complaint, is alleged to have given Business Exchange
Defendants the sole and exclusive right to sell the assets of UBI
to a third party for $2.4 million.  Plaintiff alleges that Mr. Camp
paid a commission based upon an adjusted sales price of $1.8
million, that the Book Store Trust was not ready, willing, and able
to purchase UBI because the services and structure of the
transaction failed on numerous levels, that money was later
required to be refunded, and that the Business Exchange Defendants
"breached their contract by not producing a ready, willing and able

9

purchase[r] as promised in their contract." Damages are claimed, among other things, for commissions that Plaintiff contends Defendants failed to return.

Texas law recognizes that, "[i]f by the contract of employment the broker is merely to find a customer who is able, ready, and willing to enter into a transaction with the principal on the terms prescribed by him, the broker is entitled to compensation on performing that service, whether or not the principal completes the transaction." Stevens v. Karr, 33 S.W.2d 725, 727 (Tex. 1930); *accord* Poppe v. Camelot Props., Inc., 711 S.W.2d 101, 105-06 (Tex. App.--Austin 1986, writ ref'd n.r.e.) (collecting cases). Business Exchange Defendants argue strongly that their entitlement to the commissions received was established when the Camps actually sold the UBI stock to the UBI ESOP. Nonetheless, constrained as the Court is to construe Plaintiff's allegations favorably to Plaintiff, and with no contract before the Court, and with so much of an evidentiary nature being argued, the Rule 12(b)(6) Motion to Dismiss will be denied, but without prejudice to a further dispositive motion supported by appropriate summary judgment evidence.

## 2.   Count 17: Breach of Fiduciary Duty

The Business Exchange Defendants assert that Ms. Camp cannot maintain her breach of fiduciary duty claim because she has alleged

insufficient facts to support the existence of a fiduciary duty.
Document No. 77 at 2-3.  The elements of a breach of fiduciary duty
claim under Texas law are: (1) a fiduciary relationship between the
plaintiff and defendant; (2) breach of fiduciary duty by defendant;
(3) resultant injury to plaintiff or benefit incurred to defendant.
*See* <u>City of Driscoll v. Saenz</u>, Civ. A. No. C-06-543, 2007 WL
173232, at *4 (S.D. Tex. Jan. 17, 2007)(Jack, J.); *accord* <u>Jones v.
Blume</u>, 196 S.W.3d 440, 447 (Tex. App.--Dallas 2006, no pet.).
Texas courts hold that a fiduciary relationship may arise by reason
of law, such as through agency relationships, *see, e.g.*, <u>Crim Truck
& Tractor Co. v. Navistar Int'l Transp. Corp.</u>, 823 S.W.2d 591, 593-
94 (Tex. 1992), or through an informal relationship "where one
person trusts in and relies on another, whether the relation is a
moral, social, domestic, or purely personal one," <u>Schlumberger
Tech. Corp. v. Swanson</u>, 959 S.W.2d 171, 176 (Tex. 1997).  Under
Texas law, a broker is an agent of the client who employs him, and
hence, owes a fiduciary duty to that client.  *See* <u>First City
Mortgage Co. v. Gillis</u>, 694 S.W.2d 144, 146 (Tex. App.--Houston
[14th Dist.] 1985, writ ref'd n.r.e.)(recognizing that "a broker is
a fiduciary required to exercise fidelity and good faith towards
his principal"); <u>Chien v. Chen</u>, 759 S.W.2d 484, 495 n.7 (Tex. App.-
-Austin 1988, no writ)(citing the Real Estate License Act, TEX. REV.
CIV. STAT. ANN. art. 6573a § 15 (Supp. 1988), now codified in TEX.
OCCUPATIONS CODE §§ 1101.001-1101.806, which prescribes numerous

11

duties owed by a broker to his client); <u>S. Cross Indus., Inc. v.</u> <u>Martin</u>, 604 S.W.2d 290, 292 (Tex. Civ. App. 1980, writ ref'd n.r.e.)(equating this duty to that generally recognized between agents and principals).

Here, the complaint alleges that the Camps granted the Business Exchange Defendants the sole and exclusive right to sell or dispose of the assets of UBI which were owned at the time by Mr. Camp.   Document No. 48 ¶¶ 8.109-8.114.   The Business Exchange Defendants were therefore fiduciaries to the Camps, as agents representing the Camps in the sale of their property.   The complaint additionally recites facts supporting a breach of fiduciary duty, and injury resulting from the breach.   <u>Id.</u> Accordingly, the allegations the allegations sufficiently state a claim of breach of fiduciary duty.

B.   <u>The Hollmann Defendants</u>

The Hollmann Defendants contend that Plaintiffs Ms. Camp and the Trustee cannot maintain their claims against them because (1) Plaintiffs improperly attempt to fracture a single malpractice claim into multiple claims; (2) the assignment through which Ms. Camp acquired her interest in the malpractice action is void under Texas law; and (3) the malpractice claim is barred by the applicable limitations period.   "Texas law . . . does not permit a plaintiff to divide or fracture her legal malpractice claims into

12

additional causes of action." *Goffney v. Rabson*, 56 S.W.3d 186, 190 (Tex. App.--Houston [14th Dist.] 2001, pet. denied)(citing numerous authorities); *see also* *Aiken v. Hancock*, 115 S.W.3d 26, 28 (Tex. App.--San Antonio 2003, pet. denied); *Ersek v. Davis & Davis, P.C.*, 69 S.W.3d 268, 274 (Tex. App.--Austin, 2002, pet. denied) (quoting *Sledge v. Alsup*, 759 S.W.2d 1, 2 (Tex. App.--El Paso 1988, no writ), for the proposition that "[n]othing is to be gained by fracturing a cause of action arising out of bad legal advice or improper representation into claims for negligence, breach of contract, fraud or some other name"). Notwithstanding its label, an action that arises out of an attorney's alleged poor legal advice or improper representation is one for legal malpractice. *See* *Sullivan v. Bickel & Brewer*, 943 S.W.2d 477, 481 (Tex. App.-- Dallas 1995, writ denied); *see also* *Goffney*, 56 S.W.3d at 190 (characterizing the issue in legal malpractice actions as "whether the attorney exercised that degree of care, skill, and diligence as lawyers of ordinary skill and knowledge commonly possess and exercise"); *Kahlig v. Boyd*, 980 S.W.2d 685, 688-89 (Tex. App.--San Antonio 1998, pet. denied)(construing a fraud claim arising from an attorney's failure to disclose to his client an affair with his client's wife while representing the client in a child custody battle as one for malpractice, because it related to alleged deficiencies in the representation). Thus, mere recitation of independent claims does not preclude their treatment as a single

13

cause of action if the "alternative causes of action are all
essentially means to an end to achieve one complaint of legal
malpractice." Klein v. Reynolds, Cunningham, Peterson & Cordell,
923 S.W.2d 45, 49 (Tex. App.--Houston [1st Dist.] 1995, no writ)
(internal quotations omitted).

Here, Ms. Camp's Counts 10 to 14 for breach of contract,
negligent misrepresentation, violation of the DTPA, breach of
fiduciary duty, and gross negligence are comprised of all or some
of the following allegations: that the Hollmann Defendants
(1) misrepresented that the valuation, the ESOP transaction, and
certain commissions charged by Defendants complied with controlling
law; (2) failed to advise UBI and the UBI ESOP of "the risks
associated with highly leveraged transactions," and "the relevance
and significance of securing and reviewing a repurchase liability
study"; and (3) failed to disclose conflict of interests between
the relevant parties. Document No. 48 ¶¶ 8.67, 8.71, 8.82, 8.89,
8.93. These allegations are substantially the same as those
recited in the Trustee's claims against the Hollmann Defendants for
malpractice, violation of the DTPA, and breach of fiduciary duty
under Texas common law. Document No. 47 ¶¶ 124, 128, 134. In sum,
Plaintiffs' contentions pertain to an alleged failure by the
Hollmann Defendants to exercise the requisite care, skill, and
diligence in their representation of UBI and the UBI ESOP and
therefore "amount to no more than restated claims for legal

14

malpractice." <u>Goffney</u>, 56 S.W.3d at 190.  Thus, the various state law claims asserted by Ms. Camp and the Trustee are properly construed as a single malpractice action, and the additional state law claims against the Hollmann Defendants must be dismissed.

Ms. Camp's complaint expressly states that she received by assignment from UBI and UBI ESOP the state law claims she asserts against the Hollmann Defendants, Document No. 48 ¶¶ 8.65, 8.79, 8.86, 8.90, 8.94, 8.97, which must be construed as a single claim for malpractice.  However, under Texas law, assignments of legal malpractice claims are void as contrary to public policy.  *See* <u>Britton v. Seale</u>, 81 F.3d 602, 604 (5th Cir. 1996)(construing Texas cases to bar all assignments of such actions); <u>Wright v. Sydow</u>, 173 S.W.3d 534, 553 (Tex. App.--Houston [14th Dist.] 2004, pet. denied)(concluding such assignments are injurious to the legal system); <u>City of Garland v. Booth</u>, 895 S.W.2d 766, 769 (Tex. App.-- Dallas 1995, writ denied)(listing the numerous jurisdictions that follow this approach); <u>Zuniga v. Groce, Locke & Hebdon</u>, 878 S.W.2d 313, 316 (Tex. App.--San Antonio 1994, writ ref'd).  As one court explained, "allowing assignability would debase the legal system and imperil the attorney-client relationship." <u>City of Garland</u>, 895 S.W.2d at 771.  If such an assignment is void, the right to bring the action reverts to the assignor--in this case, the Trustee.  *See* <u>Vinson & Elkins v. Moran</u>, 946 S.W.2d 381, 400 (Tex. App.--Houston [14th Dist.] 1997, writ dism'd by agr.)(voiding an

assignment of a malpractice action, but holding an assignor who participated in the appeal could prosecute his claims against the attorneys on remand); *see also* 7 WILLISTON ON CONTRACTS § 15:5 (4th ed. 1999) ("If the assignment or conveyance is champertous, it does not destroy the assignor's right; the assignor may still prosecute the claim in his own name.").   Accordingly, the right to bring a malpractice action properly belongs to the Assignor/Trustee and not to Ms. Camp.

In Count 15 Ms. Camp asserts a claim for breach of fiduciary duty under ERISA, which she allegedly also received by assignment. Federal common law, not state, governs the interpretation of rights and obligations under ERISA.   *See* <u>Firestone Tire & Rubber Co. v. Bruch</u>, 109 S. Ct. 948, 954 (1989); *see also* <u>Cooperative Benefit Adm'rs, Inc. v. Ogden</u>, 367 F.3d 323 (5th Cir. 2004) (invoking federal common law as a gap filler to ERISA's text).   ERISA is a "comprehensive and reticulated statute" which provides mechanisms for enforcing the duties of fiduciaries owed to qualified employee pension and benefit plans over which they exercise authority or control.   <u>Mertens v. Hewitt Assocs.</u>, 113 S. Ct. 2063, 2066 (1993) (quoting <u>Nachman Corp. v. Pension Beneift Guaranty Corp.</u>, 100 S. Ct. 1723, 1726 (1980)).   The Hollmann Defendants do not assert any independent grounds for dismissal of the ERISA claim, nor have they shown any legal impediment to one's prosecution of an ERISA claim for violation of an ERISA fiduciary duty alongside a state law

malpractice claim.   There is also some authority that "an express and knowing assignment of an ERISA fiduciary breach claim is valid."  <u>Tex. Life, Accident Health & Hosp. Serv. Ins. Guar. Ass'n v. Gaylord Entm't Co.</u>, 105 F.3d 210, 218 (5th Cir. 1997).   The Hollmann Defendants have not demonstrated in the present motion that Ms. Camp's ERISA claim does not state a claim upon which relief can be granted.[2]

Lastly, the Hollmann Defendants argue that the Trustee's malpractice action in Count 5 is time-barred because it accrued more than two years before the filing of suit, specifically, on September 20, 2001, when Criss Investments restated its earlier valuation.  "A motion to dismiss for failure to state a claim . . . is a valid means to raise a limitations defense if the defense clearly appears on the face of the complaint."  <u>Bush v. United States</u>, 823 F.2d 909, 910 (5th Cir. 1987).   Under Texas law, legal malpractice claims are subject to a two-year limitations period. <u>See</u> <u>Kansa Reins. Co. v. Cong. Mortgage Corp. of Tex.</u>, 20 F.3d 1362, 1374 (5th Cir. 1994); <u>Parsons v. Turley</u>, 109 S.W.3d 804 (Tex. App.-

---

[2] The Trustee also asserts an ERISA fiduciary breach claim against the Hollmann Defendants, without pleading that the claim was effectively assigned to Ms. Camp.  The Hollmann Defendants argue that the Trustee has no standing to proceed on the allegedly assigned claim because Ms. Camp, not the Trustee, owns the claim. This conclusion cannot be reached from the face of the Trustee's complaint or without reference to extraneous evidence, which is not permitted in ruling on a Rule 12(b)(6) motion.   Hence, the Trustee's ERISA fiduciary breach claim in Count 8 also survives at this pleading stage.

-Dallas 2003, pet. denied) (citing TEX. CIV. PRAC. & REM. CODE
§ 16.003(a)). "Normally, a cause of action accrues when a wrongful
act causes some legal injury." <u>Via Net v. TIG Ins. Co.</u>, 211 S.W.3d
310, 313 (Tex. 2006). However, the discovery rule may defer
accrual of a claim "until the plaintiff knew or, exercising
reasonable diligence, should have known of the facts giving rise to
the cause of action." <u>In re Coastal Plains, Inc.</u>, 179 F.3d 197,
214 (5th Cir. 1999)(citation omitted); *see also* <u>Indus. Indem. Co.
v. Chapman & Cutler</u>, 22 F.3d 1346, 1356 & n.21 (5th Cir. 1994)
(noting the applicability of the discovery rule to legal
malpractice claims). The complaint alleges that the errors in
Criss Investments' valuation, and consequently, in the advice and
services provided by the Hollmann Defendants, were not discovered
by UBI until April 19, 2004, the date on which MSA issued an
opinion assessing the fair market value of UBI at the time of sale
to be $1.3 million less than the July 7, 2000, valuation provided
by Criss Investments. The applicability of the discovery rule and
facts pled in the complaint support the possibility that the action
accrued on April 19, 2004, or within the two-year limitations
period. Therefore, the Hollmann Defendants' motion to dismiss the
malpractice claim of the Trustee is denied.

C.    <u>The MSA Defendants</u>

    1.    Motion to Dismiss Pursuant to Rule 12(b)(1)

The MSA Defendants contend that Ms. Camp has no standing to pursue her claims against it, arguing that (1) Ms. Camp's action for negligent misrepresentation fails as a matter of law because, as an adversary to the transaction for which MSA provided valuation services, she was not one of the group of persons for whose benefit MSA intended or could reasonably expect to rely on the information provided; (2) Ms. Camp was not a "consumer" within the meaning of the DTPA; (3) Ms. Camp was not in privity with MSA such that she can maintain a malpractice action against it; and (4) Ms. Camp released all claims against it in her settlement agreement with the UBI ESOP.  Document No. 52.  Standing addresses the entitlement of a litigant "to have the court decide the merits of the dispute or of particular issues."  <u>Warth v. Seldin</u>, 95 S. Ct. 2197, 2205 (1975).  Failure to satisfy the constitutional prerequisites of standing deprives a federal court of jurisdiction over the action. *See* <u>Lance v. Coffman</u>, 127 S. Ct. 1194, 1196 (2007); <u>Flast v. Cohen</u>, 88 S. Ct. 1942, 1949-50 (1968)(explaining that standing is an ingredient of justiciability under Article III, which limits the jurisdiction of federal courts).

However, in this case, MSA's arguments do not implicate Ms. Camp's standing to pursue her claims, but instead attack the

essential elements of her claims. "[I]t is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction." <u>Williamson v. Tucker</u>, 645 F.2d 404, 415 (5th Cir. 1981)(quoting <u>Bell v. Hood</u>, 66 S. Ct. 773 (1946)); *see also* <u>Steel Co. v. Citizens for a Better Env't</u>, 118 S. Ct. 1003, 1010 (1998) ("[T]he absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.*, the courts' statutory or constitutional *power* to adjudicate the case."). In sum, although MSA is not precluded from re-urging these grounds for dismissal on summary judgment, its arguments are not relevant to this Court's jurisdiction over the claims, and its Motion to Dismiss under Rule 12(b)(1) is denied.[3]

2. Motion to Dismiss Pursuant to Rule 12(b)(6)

MSA P.C. and Schumacher move for dismissal of all claims against them "because Camp fails to plead any facts [ ] related to them." Document No. 51 at 3. The "Statement of Facts" identifies MSA alone as the party that issued the valuation, but under Counts 18, 19, and 20, Plaintiffs allege that *all* the MSA Defendants, or one or more of them, rendered a valuation opinion, committed

---

[3] Because the Court denies The MSA Defendants's Motion to Dismiss under 12(b)(1), Ms. Camp's objections to evidence submitted by Defendants in support of their motion are denied as MOOT. Document No. 63 at 3.

20

deceptive trade practices, or engaged in malpractice, etc. Document No. 48 ¶¶ 7.92, 8.118, 8.121, 8.124.  A plaintiff may plead in the alternative with regard to closely interrelated Defendants whose specific conduct and responsibility may not be known or knowable when a plaintiff files suit, and pretrial discovery enables the exact facts to be revealed.  This is suffi-cient notice pleading that precludes dismissal under Rule 12(b)(6).

The MSA Defendants also raise a limitations defense as grounds for dismissing all claims against them.  Document No. 51 ¶¶ 17-18. Ms. Camp's actions under Texas law for malpractice, negligent misrepresentation, and for violation of the DTPA are subject to a two-year statute of limitations.  *See* HECI Exploration Co. v. Neel, 982 S.W.2d 881, 885 (Tex. 1998)(limitations period for negligent misrepresentation is two years); Murphy v. Mullin, Hoard & Brown, L.L.P., 168 S.W.3d 288, 291 (Tex. App.--Dallas 2005, no pet.) (two-year limitations applies to malpractice actions); TEX. CIV. PRAC. & REM. CODE § 16.003(a) (providing a two-year limitations period for tort claims); TEX. BUS. & COMM. CODE ANN. § 17.565 (prescribing two year statute of limitations applicable to DTPA claims).  The MSA Defendants assert that, even if the complaint invoked the discovery rule, the disparity between the valuations provided by Roland Criss and MSA were such that Ms. Camp should have known of the facts supporting her claim at the time she settled with the UBI ESOP. However, the complaint also alleges that "[i]n 2006, Ms. Camp

21

became aware that [UBI] and/or the [UBI] ESOP sold certain real property to Leslie and Mary Garb for $1,200,000 in December 2004," property that was owned by UBI when Mr. Camp sold UBI to the UBI ESOP.  Document No. 48 ¶ 7.103.  Construing this allegation in a light most favorable to Ms. Camp, the complaint invokes the discovery rule by suggesting that Ms. Camp had no knowledge or reason to suspect that the valuation provided by MSA, rather than that of Criss Investments, was erroneous until she discovered the subsequent sale of a non-bookstore real estate asset of UBI for more than MSA's appraised value of the entirety of UBI.  Because the face of the complaint does not preclude the actions having accrued within two years of filing suit, dismissal on the basis of limitations will be denied.

Lastly, the MSA Defendants argue that Ms. Camp's DTPA claim in Count 19 must be dismissed because she "failed to plead facts that state a claim for relief under the DTPA 'professional services' exemption." Document No. 51 ¶ 19.  This exemption operates as an affirmative defense to liability under the DTPA. *See* Head v. U.S. Inspect DFW, Inc., 159 S.W.3d 731, 740 (Tex. App.--Ft. Worth 2005, no pet.); *see also* Cole v. Cent. Valley Chems., Inc., 9 S.W.3d 207, 210 (Tex. App.--San Antonio 1999, pet. denied) (denying summary judgment to a defendant on its affirmative defense of exclusion from the DTPA because defendant did not actually provide professional services).  Under the notice pleading standards of

22

Rule 8(a), a plaintiff need not plead around or anticipate affirmative defenses. *See* United States v. N. Trust Co., 372 F.3d 886, 888 (7th Cir. 2004); Irwin v. Country Coach Inc., No. 4:05CV145, 2006 WL 278267, at *5 (E.D. Tex. Feb. 3, 2006) ("Plaintiffs are not required to plead around affirmative defenses."). Moreover, even assuming that the defense is implicated on the face of the complaint, Ms. Camp has, among other things, alleged that MSA "engaged in misleading statements of fact concerning the reasons for reducing the valuation opinion" of the Roland Criss Defendants, which, if assumed true, could qualify as misrepresentations of material fact excepted from the professional services exemption. Document No. 48 ¶ 8.121; *See* TEX. BUS. & COMM. CODE § 17.49(c)(1); *see also* Nast v. State Farm Fire & Cas Co., 82 S.W.3d 114, 122 (Tex. App.--San Antonio 2002, no pet.)(holding the exemption inapplicable to an "express misrepresentation of material fact that cannot be characterized as advice, judgment, or opinion"). The complaint therefore sufficiently alleges a violation of the DTPA.

D.   Bruce Ruud

1.   Motion to Dismiss Pursuant to Rule 12(b)(1)

Bruce Ruud challenges Ms. Camp's standing to bring an action for negligent misrepresentation on substantially similar grounds as those argued by MSA, namely that: (1) Bruce Ruud did not owe a duty

to Ms. Camp in the transaction giving rise to the claim; and
(2) Ms. Camp released her claims against Bruce Ruud in her
settlement agreement with UBI and the UBI ESOP.   Document No. 57
¶¶ 7-24.   As discussed above, these arguments do not speak to the
Court's jurisdiction but are merely attacks on the merits of the
claims.   Thus, the motion to dismiss under Rule 12(b)(1) is denied.

   2.   Motion to Dismiss Pursuant to Rule 12(b)(6)

   Bruce Ruud also contends that the facts alleged in the
complaint do not support an action for negligent misrepresentation.
Negligent misrepresentation requires proof that "(1) the represen-
tation is made by a defendant in the course of his business, or in
a transaction in which he has a pecuniary interest; (2) the
defendant supplies 'false information' for the guidance of others
in their business; (3) the defendant did not exercise reasonable
care or competence in obtaining or communicating the information;
and (4) the plaintiff suffers pecuniary loss by justifiably relying
on the representation."   Fed. Land Bank Ass'n   v. Sloane, 825
S.W.2d 439, 442 (Tex. 1991); *accord* First Nat'l Bank of Durant v.
Trans Terra Corp. Int'l, 142 F.3d 802, 809 (5th Cir. 1998)(quoting
Sloane).   The scope of the defendant's duty is limited to loss
suffered "by the person or one of a limited group of persons for
whose benefit and guidance [one] intends to supply the information
or knows that the recipient intends to supply it . . . ."

McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests, 991
S.W.2d 787, 794 (1999) (quoting the RESTATEMENT (SECOND) OF TORTS
§ 552(2)).

The complaint states that Bruce Ruud made a representation "to
Ms. Camp as a part of her settlement with [UBI] and the [UBI] ESOP"
that "the settlement . . . was reasonable given the likelihood of
the [UBI] ESOP's full recovery, the risks of litigation, and the
value of the claims forgone." Document No. 48 ¶ 8.127. This
representation was purportedly negligently made, and erroneous
because the UBI ESOP never fully recovered, UBI filed bankruptcy,
and "the value of certain claims allegedly assigned to Ms. Camp
pursuant to her settlement agreement with the [UBI] ESOP may have
little or no value." Id. ¶ 8.128. Although Bruce Ruud asserts
that its alleged role as a fiduciary representing the UBI ESOP in
its settlement with Ms. Camp proscribes the conclusion that Ms.
Camp could reasonably have been anticipated to rely on its opinion,
Document No. 72 ¶¶ 1-7, this argument relies on facts outside the
complaint that are not appropriately considered upon a Rule
12(b)(6) motion. Drawing all reasonable inferences from the facts
pled in the complaint, Ms. Camp has sufficiently pled a claim for
negligent misrepresentation.

Bruce Ruud additionally contends that Ms. Camp's negligent
misrepresentation claim is time-barred because it accrued when she
settled with the UBI ESOP in reliance on its opinion on June 7,

2004, more than two years before she filed suit against Bruce Ruud
on November 18, 2006.  Document No. 55 ¶ 9.  Although determining
when a cause of action accrues is a question of law, *see* <u>Moreno v.</u>
<u>Sterling Drug, Inc.</u>, 787 S.W.2d 348, 351 (Tex. 1990), a limitations
defense provides grounds for dismissal only if the untimeliness of
a claim is apparent on the face of the complaint, *see* <u>Jones v.</u>
<u>Bock</u>, 127 S. Ct. 910, 920-21 (2007); <u>Stanley v. Foster</u>, 464 F.3d
565, 568 (5th Cir. 2006).  Here, Bruce Ruud is alleged to have
represented, among other things, that the settlement was reasonable
based on the likelihood that the UBI ESOP would recover but that
the UBI ESOP in fact did not recover and UBI filed bankruptcy in
2006.  Document No. 48 ¶¶ 8.127-.128.  Reading the allegations in
a light most favorable to Ms. Camp, the complaint appears to invoke
the discovery rule to toll the limitations period until the filing
of bankruptcy by the UBI ESOP in 2006.  Based on the potential
applicability of the discovery rule, it is therefore not apparent
on the face of the complaint that the negligent misrepresentation
claim is untimely, and dismissal is improper.

E.   <u>Roland Criss Defendants</u>

    The Roland Criss Defendants move to abate the claims against
them on the basis that Ms. Camp and the Trustee failed to provide
written notice to them before filing suit, as required under the
DTPA.  Document No. 83 ¶ 13; TEX. BUS. & COMM. CODE § 17.505.  "[I]f

a plaintiff files an action for damages under the DTPA without first giving the required notice, and a defendant timely requests an abatement, the trial court must abate the proceedings for 60 days." <u>Hines v. Hash</u>, 843 S.W.2d 464, 469 (Tex. 1992); *see also* <u>Ramirez v. Am. Home Prods.</u>, No. C.A. B-03-155, 2005 WL 2277518, at *10 (S.D. Tex. Sept. 16, 2005)(Tagle, J.)(explaining that notice is mandatory under the DTPA).   The statute provides for automatic abatement on the 11th day after the date upon which the plea in abatement was filed, if the plea is verified and states pre-suit notice was not given in accordance with Section 17.505(a), as the Roland Criss Defendants have stated in their verified pleading.

Plaintiffs do not dispute that they did not give the 60 days' notice but argue that notice was not required under Section 17.505(b) because the statute of limitations was about to expire on Plaintiffs' claims.   Document No. 86 ¶ 7; TEX. BUS. & COMM. CODE § 17.505(b).   However, to benefit from this exception, "[a] plaintiff must *plead* and prove that he qualifies for the limitations exception." <u>Winkle Chevy-Olds-Pontiac, Inc. v. Condon</u>, 830 S.W.2d 740, 745 (Tex. App.--Corpus Christi 1992, writ dism'd) (emphasis added).   The complaint does not invoke the limitations exception to the notice requirement, and it is therefore inapplicable.

Plaintiffs also argue that the Roland Criss Defendants, by their unreasonable delay in filing an answer and then answering

27

only when Plaintiffs had moved for and were about to obtain a default judgment, constitutes a waiver of the notice requirement by the Roland Criss Defendants. Plaintiffs acknowledge, however, that they have no case authority for their waiver argument and that a plain reading of the statute makes no such exception or allowance for court discretion. The statute requires only that the plea in abatement be filed no later than the "30th day after the date the person *files an original answer* . . . ." § 17.505(c) (emphasis added). The Court is sympathetic to Plaintiffs' views on the seeming futility of requiring such a written notice so long after the case was filed, but the Roland Criss Defendants argue that receipt of the written notice is necessary for them to avail themselves to their valuable right to make a settlement offer to Plaintiffs and an offer of reasonable and necessary attorneys' fees within the statutory 60-day stay, which offers, if not accepted by Plaintiffs, may limit the awards of damages and attorneys' fees for which the Roland Criss Defendants ultimately may be found liable. *See* § 17.505(2). Accordingly, Plaintiffs must comply with the mandatory notice provision of the DTPA. Plaintiffs' suit against the Roland Criss Defendants is abated until the 60th day following the date that Plaintiffs serve written notice upon the Roland Criss Defendants in compliance with Section 17.505(a).

IV.   <u>Order</u>

It is therefore ORDERED that

Defendants Daniel Hollmann's and Hollmann, Lyon, Patterson &
Durell, Inc.'s Motions to Dismiss the Second Amended Complaints of
Plaintiffs Martha Camp (Document No. 49) and David J. Askanase,
Trustee for the Bankruptcy Estate of UBI and the UBI ESOP (Document
No. 50) are GRANTED IN PART, and Ms. Camp's Counts 10 through 14
for breach of contract, negligent misrepresentation, violation of
the DTPA, gross negligence, and breach of fiduciary duty under
Texas law, and the Trustee's Counts 6 and 7, for violation of the
DTPA and for breach of fiduciary duty under Texas law, are
DISMISSED WITH PREJUDICE, and the motions are otherwise in all
things DENIED; and Defendants RCW & Co., Inc. d/b/a Roland Criss &
Co., Ltd.'s, Christine Denton's, and Roland Criss Investment
Corp.'s Plea in Abatement (Document No. 83) is GRANTED, and
Plaintiffs' suit against these Defendants is STAYED until the 60th
day after the date that Plaintiffs serve written notice upon such
Defendants in compliance with TEX. BUS. & COMM. CODE § 17.505(a).  It
is further

ORDERED that Defendants McClure & Schumacher, P.C.'s, Jeff
Schumacher's, and McClure, Schumacher & Associates, L.L.C.'s
Motions to Dismiss pursuant to Rule 12(b)(1) (Document No. 52), and
Rule 12(b)(6) (Document No. 51), Defendant Bruce Ruud & Associates,
L.L.C.'s Motions to Dismiss Pursuant to Rule 12(b)(1) (Document

No. 57) and 12(b)(6) (Document No. 55), and Defendants Erin Bonner's and Preferred Brokerage Services, Inc. d/b/a Liberty Business Exchange's Motion to Dismiss (Document No. 59), are in all things DENIED.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED in Houston, Texas, on this 3rd day of May, 2007.


_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE